PACE *v.* GIBSON.

1. APPEAL AND ERROR—RECORD—EVIDENCE TAKEN IN ADVANCE OF TRIAL.

Testimony of witness subpoenaed by defendant, taken in advance of the impaneling of the jury for the convenience of the witness, but not introduced by either party at the trial, may not be considered on appeal from directed verdict and judgment for defendant in the determination of questions before the Supreme Court even though included in the record.

2. NEGLIGENCE—VOLUNTEER.

One who is merely a volunteer in rendering service to another cannot recover if injured because of negligence, there being no duty other than not to injure him by willful or wanton act.

3. SAME—VOLUNTEER.

One with an interest, who is requested by another's servant to assist in adjusting or fixing an instrumentality, is not a mere volunteer, but is within the rule requiring the exercise of due care and need not show the tort-feasor to have been guilty of willful and wanton misconduct in order to recover for injuries sustained.

4. SAME—VOLUNTEER—UNLOADING TRUCK BY COMMON CARRIER'S TRUCK DRIVER.

Common carrier's truck driver who was requested by consignee to

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error §§ 812, 836.
[2-4] 35 Am Jur, Master and Servant § 166.
[5] 38 Am Jur, Negligence §§ 335, 336.

assist in unloading two 700-pound boxes and was injured by reason of latter's negligence, had an interest along with the carrier in effecting prompt delivery, hence, it may not be said that he was a volunteer chargeable with contributory negligence on basis of having assumed the risk of being injured by ordinary negligence on part of defendant or his employee.

5. SAME—UNLOADING TRUCK OF COMMON CARRIER BY TRUCK DRIVER— CONTRIBUTORY NEGLIGENCE.

Common carrier's truck driver who was requested by the consignee of two 700-pound wooden boxes to assist in unloading them and was injured when second box fell as the consignee and his employee suddenly released it without warning plaintiff, contrary to method that should have been followed, was not guilty of contributory negligence as a matter of law, since he was not bound to anticipate their failure to comply with instructions as to method of unloading.

Appeal from Oakland; Doty (Frank L.), J. Submitted June 2, 1959. (Docket No. 13, Calendar No. 47,784.) Decided October 12, 1959.

Case by Hurles E. Pace against Robert C. Gibson and Betty Gibson, doing business as Harley Davidson Sales Company, for personal injuries sustained while assisting in unloading shipment of merchandise at defendants' place of business. Directed verdict and judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Anthony Renne,* for plaintiff.

*David C. Pence,* for defendants.

CARR, J. This is an action for damages for injuries sustained by plaintiff because of alleged negligence on the part of the defendants. On June 4, 1957, plaintiff was employed by the Trans-American Freight Line as a truck driver working out of the Pontiac terminal of the company. The defendants were at the time engaged in business in the city of

Pontiac, said business involving the servicing and sale of motorcycles. In the course of his employment plaintiff, operating a semi-trailer, went to defendants' establishment for the purpose of delivering 2 large wooden boxes each containing merchandise weighing approximately 700 pounds.

Plaintiff alleged in his declaration that at the request of defendants he assisted in the unloading operation, that in unloading 1 of the crates or boxes defendant Robert C. Gibson and his employee suddenly and without warning released their hold on the box whereupon it fell against plaintiff and upon his feet, causing injuries to him. The pleading averred that such conduct was negligent and resulted in the injuries for which plaintiff sought to recover damages. Defendants by answer denied all claims of negligence on their part, averred that the duty rested on the common carrier by which plaintiff was employed to deliver the merchandise, and that plaintiff requested assistance from defendants and their employee in unloading it. It was further pleaded that the carrier was guilty of negligence in not properly equipping the truck with facilities for unloading.

The case came to trial before the circuit judge and a jury. At the conclusion of plaintiff's proofs counsel for defendants moved for a directed verdict in their favor, asserting that negligence on the part of defendants had not been established, that under plaintiff's theory of the case he was merely a volunteer, that the duty rested on the carrier to unload the merchandise, and that as a result of his conduct plaintiff was guilty of contributory negligence as a matter of law. The trial judge concluded that under plaintiff's proofs he was a volunteer, and as such assumed the risk of being injured, that he could not recover except on a showing of willful or wanton misconduct on the part of the defendants, and that there

was no proof of such misconduct, or of ordinary negligence. In accordance with the conclusions reached the motion was granted and verdict directed accordingly. Plaintiff's motion for a new trial was denied and he has appealed, claiming that the directed verdict was erroneous.

The record before us indicates that defendants' employee, Charles Robert Gabelman, assisted in the unloading of the boxes of merchandise. It further appears that the testimony of Gabelman, who had been subpoenaed by defendants as a witness, was, for the convenience of such witness, taken in advance of the impaneling of the jury. He was not a witness on the trial nor was the testimony so taken introduced by either party. Counsel for appellant has caused it to be included in the record, but under the circumstances it cannot be considered in the determination of the questions now before us. In consequence, insofar as factual issues are concerned, we are limited to plaintiff's testimony and to facts that are admitted under the pleadings. ·

Testifying as a witness in his own behalf plaintiff claimed that when he took the merchandise to defendants' place of business he discovered that there was no unloading dock, that such facility was necessary to the proper handling of the boxes, and that he stated to defendants that he should return the shipment to his employer's terminal and have it delivered through another carrier. He claimed further that defendants objected to such procedure, claiming that it would materially increase the cost to them, and that he was assured by Mr. Gibson, hereinafter referred to as the defendant, that if plaintiff would assist the defendant and his employee Gabelman the 3 could unload the boxes.

Plaintiff testified that he finally agreed to help in the unloading process, that defendant procured a large automobile or truck tire which he placed on

the ground immediately at the rear of the trailer, that defendant stated in substance that each box would be moved to the rear of the trailer, the floor of which was approximately 4 feet above the ground, that the 3 men would then slide it down to within a few inches of the tire, and that it would then be released and permitted to drop. It was explained by defendant that this would permit each to withdraw his hands from the crate or box to prevent injury. The first crate of merchandise was unloaded in the manner indicated, the parties releasing their hold when it was some 3 or 4 inches above the tire. The second crate after being moved to the rear of the trailer was lowered to a point, according to plaintiff's testimony, approximately 2–1/2 feet above the ground when he suddenly discovered that he could not stop its downward course, that it struck his legs, throwing him backward and down, and landed on his feet, causing serious injuries.

It was the claim of the plaintiff in substance that defendant and Gabelman suddenly released their hold on the box, and that because of his inability to control it alone the result indicated followed. He further testified that no warning was given to him of any intention on the part of defendant or Gabelman to release the box, that such conduct was not in accord with the plan of unloading as outlined by defendant, and that the action of the latter and of his employee constituted negligence.

As above indicated it was the claim of the defendants in the trial court that plaintiff was, under his own testimony, a volunteer and that as such he assumed the risk of any negligent injuries that he might suffer in the course of the unloading operation. This Court in *Diefenbach* v. *Great Atlantic & Pacific Tea Co.*, 280 Mich 507, recognized the general rule that one who is merely a volunteer in rendering service to another cannot recover if injured because

of negligence, there being no duty other than not to injure him by willful or wanton act. In the instant case there is no testimony justifying the conclusion that defendant, or his employee, was guilty of willfulness or wantonness resulting in the injury to the plaintiff. It does not appear that any such claim is made on behalf of appellant. If, therefore, he was in fact a volunteer assuming the risk of negligent injury he is not entitled to recover. *Smedley* v. *Mashek Chemical & Iron Co.*, 189 Mich 64; *Diefenbach* v. *Great Atlantic & Pacific Tea Co., supra.*

Does plaintiff's testimony establish that he was a volunteer in the commonly accepted meaning of that term? We think the answer to the question depends on whether it can be said that he or his employer had an interest in the performance of the work in which he undertook to assist. In discussing the subject it is said in 92 CJS, Volunteer, p 1032:

"It has been said that no definition of a volunteer can be given without qualification, since each case must be decided on its own merits. In a general sense a 'volunteer' is one who does or undertakes to do that which he is not legally or morally bound to do, and which is not in pursuance or protection of any interest; one who intrudes himself into matters which do not concern him. The word is more particularly defined as meaning one who enters into service of his own free will; one who gives his services without any express or implied promise of remuneration; one who has no interest in the work, but nevertheless undertakes to assist therein; one who merely offers his service on his own free will, as opposed to one who is conscripted. Under these definitions, a person who, although not obliged to do an act, yet has an interest in doing it, is not necessarily a volunteer."

In view of certain arguments in the briefs of counsel with reference to the status of the plaintiff, the following statement found in 99 CJS, Workmen's Compensation § 75, pp 298, 299, is of interest:

"In general, a person who does work for another while in the status of a volunteer is not entitled to the benefits of a workmen's compensation act as an employee; thus, an act under which only those who perform a service for hire are employees does not apply to a volunteer, and the mere doing of work without authorization by the person for whom it is done will not entitle the worker to compensation. Where an employee acts in the interest of his employer in coming to the assistance of a third person, he does not become an emergency employee of the person to whom he renders such assistance."

The pertinent provision of the Michigan workmen's compensation law found in part 1, § 7*, of the act is in accord with the general statement above quoted, and contains specific reference to a "contract of hire, express or implied." See, also, *Powell* v. *Twin Drilling Co.*, 300 Mich 566.

In accord with the exception to the general rule as to the right of a volunteer to recover damages on the basis of ordinary negligence is the following statement in 56 CJS, Master and Servant § 177, p 865:

"Where the servant of one master has an interest in the work in any proper capacity and at the request or with the consent of another servant undertakes to assist in the work, he does not do so at his own risk, and, if he is injured by their carelessness, their master is responsible."

In *Johnson* v. *E. C. Clark Motor Co.*, 173 Mich 277 (44 LRA NS 830) the plaintiff was sent by his em-

* CLS 1956, § 411.7 (Stat Ann 1957 Cum Supp § 17.147).

ployer to defendant's factory to see that certain motors were tested in accordance with a contractual arrangement between the parties. While there he undertook to adjust a pulley upon the transmission shaft of a motor. Such an undertaking was not a part of his ordinary duties. While he was doing so, an employee of defendant turned a switch, setting the pulley in motion and causing serious injury to plaintiff's right arm resulting in amputation. The claim was made that plaintiff was a mere volunteer, but this Court concluded otherwise on the theory, above indicated, that plaintiff's employer was interested in the work that was being done.

Among other authorities cited in support of the conclusion reached in the case above cited was *Kelly* v. *Tyra,* 103 Minn 176 (114 NW 750, 115 NW 636, 17 LRA NS 334). There plaintiff, while endeavoring to protect property of his employer, was injured by the negligence of employees of a subcontractor whom he was assisting for the purpose indicated. The court rejected a claim that plaintiff was a mere volunteer, saying, after referring to the general rule (pp 180, 181):

"There is, however, an increasing class of cases in which the exercise of proportionate care is held to be due to servants of different masters who assist in the performance of a service mutually beneficial to such employers. Thus a servant of a shipper, who, to prevent delay, aids the servants of a carrier in shunting cars, is not a mere volunteer assisting defendant's servants, although on request, but is regarded as having been on defendant's premises with a purpose of expediting the delivery of his own goods. The carrier is liable to him for the negligence of its servants. *Holmes* v. *Northeastern R. Co.,* 4 LR Ex 254; 6 LR Ex 123; *Wright* v. *London & N. W. R. Co.,* 1 LR QB 252; *Abraham* v. *Reynolds,* 5 Hurlst & N 142 (157 Eng Rep 1133). And see

*Hannigan* v. *Union Warehouse Co.*, 3 App Div 618 (38 NYS 272); *Connors* v. *Great Northern Elevator Co.*, 90 App Div 311 (85 NYS 644). *Cf. Elliott* v. *Hall*, 15 LR QB 315. So one with an interest, who is requested by another's servant to assist in adjusting or fixing an instrumentality, is not a mere volunteer, but is within the rule requiring the exercise of due care. *Meyer* v. *Kenyon-Rosing Machinery Co.*, 95 Minn 329 (104 NW 132); *Empire Laundry Machinery Co.* v. *Brady*, 60 Ill App 379. 'The distinction running through all the cases is this: That where a mere volunteer, that is, one who has no interest in the work, undertakes to assist the servants of another, he does so at his own risk. In such a case the maxim of *respondeat superior* does not apply. But where one has an interest in the work, either as consignee or the servant of a consignee, or in any other capacity, and, at the request or with the consent of another's servants, undertakes to assist them, he does not do so at his own risk, and, if injured by their carelessness, their master is responsible. In such a case the maxim of *respondeat superior* does apply. The hinge on which the cases turn is the presence or absence of self-interest. In the one case, the person injured is a mere intruder or officious intermeddler. In the other, he is a person in the regular pursuit of his own business and entitled to the same protection as any one whose business relations with the master expose him to injury from the carelessness of the master's servants.' *Welch* v. *Maine Central R. Co.*, 86 Me 552, 565, 566 (30 A 116, 25 LRA 658)."

Involved in *Schiano* v. *McCarthy Freight System*, 72 RI 455 (53 A2d 527), were facts analogous to those in the case at bar. There the plaintiff was injured while assisting in loading a barrel of scrap silver, weighing between 300 and 400 pounds, on a truck operated by the defendant as a common carrier. Apparently it was not the duty of plaintiff to render assistance of the character in question,

but he was requested or directed to do so by his employer's manager to whom the truck driver had applied for assistance. Plaintiff claimed that he was injured because of the negligence of the defendant's employee. It was argued that plaintiff was a mere volunteer. The court, however, rejected the contention under the proofs, pointing out in the opinion that the plaintiff's employer and defendant had a common interest in the transportation of the barrel of scrap silver. Among other decisions in accord with the cases above cited are: *Krull* v. *Triangle Dairy, Inc.,* 59 Ohio App 107 (17 NE2d 291); *Welch* v. *Maine Central R. Co.,* 86 Me 552 (30 A 116, 25 LRA 658); *Transport Co. of Texas* v. *Arkansas Fuel Oil Co.,* 210 Ark 862 (198 SW2d 175); *O'Shea* v. *Pacific Gas & Electric Company,* 18 Cal App2d 32 (62 P2d 1066); *Hughes* v. *Shanafelt,* 203 Okla 80 (218 P2d 350); *Lambert* v. *Paul W. Senne Funeral Home, Inc.,* 343 Ill App 136 (98 NE2d 519); *Hughes* v. *Weekley Elevator Co.,* 37 Ga App 130 (138 SE 633).

In the instant case the testimony of the plaintiff fairly discloses that he and his employer were interested in the unloading of the merchandise. Said employer was engaged as a common carrier in the transportation and delivery of freight by motor truck. It was to its interest that the equipment operated by plaintiff should be unloaded to the end that it would be available for other transportation, and that the merchandise be delivered to the consignee. Plaintiff was also interested in turning the merchandise over to the consignee in lieu of hauling it back to the terminal and taking action to have it delivered by another facility. We have, in consequence, a situation in which plaintiff and his employer as well as the defendants were interested in the unloading of the boxes or crates. In view

of the testimony to the effect that defendants author-ized and induced plaintiff to assist in the unloading operation, we are not here concerned with the question, involved in some of the decisions above cited, as to the authority of an agent or employee enlisting the aid of another.

Under the circumstances here presented it cannot be said as a matter of law that plaintiff was a mere volunteer. He did not, in consequence, assume the risk of being injured by ordinary negligence on the part of defendant or his employee, and may not be charged with contributory negligence on such basis. In viewing the situation, we have in mind the general rule that the testimony must be construed as strongly as reasonably possible in favor of the plaintiff.

Neither may it be said as a matter of law, on the basis of his conduct as shown by his testimony, that plaintiff failed to establish his freedom from contributory negligence. Under the circumstances defendant owed him the duty of exercising ordinary care for his safety. He had a right to rely on the instructions that defendant had given as to the method that should be followed in unloading the crates, and to assume that defendant and his employee would be governed accordingly. He was not required to anticipate that either, or both, would suddenly release his hold on the crate or box without a proper warning to him, thereby permitting the crate to slide against him with the resulting injury. *Hunter v. Baldwin,* 268 Mich 106; *Kavigian v. Lonero,* 312 Mass 603 (45 NE2d 823). See, also, *Klein v. Detroit Metallic Casket Company,* 336 Mich 157.

The conclusions reached with reference to the issues above discussed render it unnecessary to consider other questions referred to by counsel in their briefs. The judgment entered on the directed ver-

dict is reversed and the case remanded for a new trial.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.